## Dancy vs. Phelan.

1. One who has deposited money with another to be used in a speculation upon chances, or the purchase of "futures," has no right of action to recover it back until after demand for its return or repayment.

2. A demand is not dispensed with by a fraudulent execution of the illegal trust, or a false and fraudulent account of the result.

October 12, 1888.

Actions. Demand. Bailments. Futures. Debtor and creditor. Amendment. Trusts. Public policy. Before Judge Van Epps. City court of Atlanta. March term, 1888.

Dancy sued Phelan, doing business as S. H. Phelan, manager, alleging an indebtedness by Phelan to him of $3,516.25, besides interest. The declaration alleges that Phelan, during the present year and before, has conducted, and is now conducting in Atlanta and in other cities, a business commonly known as a "bucket-shop," wherein Phelan received as margins from his customers, plaintiff being one, deposits of money to be used by Phelan in buying and selling futures in railroad stocks, pork, wheat, etc., all of said transactions being purely speculation upon chances and betting upon the market, and in none of which was there actual dealing in the property itself either had or contemplated; that on February 5, 1887, and on divers days since up to May 5, 1887, Phelan received for plaintiff divers sums of money as margins, to be used by him in the purchase and sale of futures for plaintiff and in the carrying on of the business of Phelan, aggregating $3,516.25, $950.25 of which was deposited as margins for speculating in railroad stock futures, $1,375 as margins for speculating in pork futures, and $1,190 as margins for speculating in wheat futures; that all of said margins were

received by Phelan as plaintiff's agent, for the purpose of using them in the wagering and illegal contracts mentioned, commonly called futures, and in which it was understood and intended by both parties that the property was not to be delivered or received, but there would be a settlement at a future day, when the difference between the market price and the contract price would be paid by the losing party; and that Phelan still holds all of said margins, aggregating $3,516.25, received from plaintiff, and unjustly and illegally detains and withholds the same.

The defendant demurred to this declaration on the grounds that the facts alleged showed that plaintiff was engaged in an illegal and immoral transaction at the time that the deposits of money as margins are alleged to have been made, in this, that said deposits of margins were paid to Phelan to be used by him for the benefit of plaintiff in the purchase and sale of futures, which plaintiff asserts are transactions purely speculative upon chances and betting upon the market; and that, upon the facts stated, no suit was maintainable until a demand had been first made upon defendant, and there was no allegation that such demand was made prior to the beginning of the suit. Thereupon plaintiff amended his declaration and alleged that he was not bound to make any demand, because, before the bringing of the suit, on May 2, 1887, defendant gave plaintiff notice that all of his contracts in wheat and pork would be closed out at the opening quotations from Chicago that morning, by which he meant that all the margins had been absorbed, and he must put up more; that on May 11, 1887, defendant called on plaintiff for $700 margins, and notified him that he would close all of his (plaintiff's) interest except what was fully covered, by which he meant that if plaintiff did not pay him $700 more, he would

treat all the money deposited previously as absorbed; that on May 12, 1887, defendant telegraphed his agent in Savannah: "Notify Dancy at once his contracts will close unless margin called is at once deposited; for yourself, instructions from this office are to be literally enforced." This telegram was shown plaintiff by defendant's agent in Savannah, whereupon plaintiff refused to put up the $700 additional, and immediately brought this suit. He alleges that this action on the part of defendant rendered it unnecessary that he should make any demand, because thereby defendant put himself in an attitude of hostility to plaintiff's claim; that the money previously deposited with defendant had not been invested for plaintiff's account, and was still held by defendant at the time he made the demand on plaintiff for the additional $700; and that the representations of defendant that the margins of plaintiff had been absorbed was untrue, and was falsely and fraudulently made by defendant that he might avoid his duty to return the margin advanced by plaintiff to him.

To the declaration as amended, the demurrer was renewed, and was sustained. The plaintiff excepted, alleging that the court erred (1) in holding that the original declaration was demurrable because there was no allegation of a demand; (2) in holding that the amendment filed called upon the court to pass upon and construe an illegal contract; (3) in sustaining the demurrer to the declaration as amended.

DENMARK & ADAMS and HALL & HAMMOND, for plaintiff.

JACKSON & JACKSON, for defendant.

BLECKLEY, Chief Justice.

1. When one deposits money with another to be used

in illicit commerce, the transaction is pure as a mere bailment for custody and preservation of the money, but for nothing else. Whilst the illegal instructions are unrevoked, there is no duty to account or pay ever, nor any relation of debtor and creditor. The bailee is a mere stakeholder. When the instructions are revoked, there is still no duty to pay over the money immediately, but only upon demand. Generally, a mere passive custodian, whether as bailee or as agent, is not subject to action until after demand and refusal. Story on Bailments, §107; Meacham on Agency, §531.*

2. By an amendment to the declaration, it was sought to excuse the omission of a demand, by an allegation that the defendant had rendered a false account of his illegal trust. He was under no obligation to account at all; and rendering a false account was therefore no violation of his legal duty. It was the same as rendering none. By his amendment to the declaration, the plaintiff brought forward this illegal trust and the abuse of it upon which to ground his right to maintain the action without first making a demand. He sought to go through the trust relation to gain the standing which a demand would have given him; and thus he invoked the illegal element of the transaction upon an essential branch of his case. The declaration as amended was as defective as it was before amendment. It would be as much contrary to public policy to permit the plaintiff to go through the illegal trust to establish his right to sue in reference to the element of demand as in reference to any other essential of his case.

The demurrer, however, ought to have been sustained upon the single ground of the failure to allege demand; and in order that the case may stand upon the record as we think it stands in law, we direct that

*Jones *vs*. Cavanaugh (Mass.), 21 N. E. 306.

the judgment be modified so as to be a judgment not generally sustaining the demurrer, but sustaining it upon the ground that no demand was alleged; and with this modification the judgment is affirmed.

