## McLENNAN *v.* WHIDDON.

1. Where one who has deposited money with a stakeholder as a wager notifies the stakeholder, while the money is still in his hands, that the bet is withdrawn, and instructs him not to pay it to the other party to the transaction, the stakeholder is bound to follow such instruction ; and if, notwithstanding such notice, he pays the money to the winning party, the retracting party may, after demand upon him for the money so deposited, recover from the stakeholder in an action for money had and received. *Colson* v. *Meyers*, 80 *Ga.* 499, distinguished.

2. Gambling contracts are illegal in this State. All are under the ban of the law. None are more pernicious than those wagering money or other things of value on the result of elections. Such wagers "strike at the foundations of popular institutions, corrupt the ballot-box, and interfere with the freedom and purity of elections."

Submitted June 24, — Decided July 13, 1904.

Complaint. Before Judge Roberts. Telfair superior court. November 18, 1903.

*D. C. McLennan*, for plaintiff.

CANDLER, J. McLennan brought suit against Whiddon in a justice's court for $100, money had and received, which was deposited as a wager with Whiddon, as stakeholder, by Wright, who acted as agent for McLennan ; it being contended that Whiddon paid over the money to the other party to the wager after being notified that the bet had been withdrawn and after being instructed not to pay it over. The case was by consent appealed to the superior court, and on the trial in that court the jury found for the plaintiff the amount sued for, with interest. On motion

a new trial was granted on the general grounds that the verdict was contrary to law and the evidence, and to this the plaintiff excepted. A careful examination of the record shows that there is practically no dispute as to any issue of fact involved. The evidence shows that McLennan was a candidate before a democratic primary for the nomination for representative in the General Assembly from Telfair county. A few weeks before the date of the primary, Wright and one McRae each bet $100 on the result of the election. The money was put in an envelope and delivered to Whiddon, the stakeholder. It was agreed between the parties to the transaction that if McLennan was nominated, Whiddon was to turn over the money to Wright, while if Cook, his opponent, was nominated, the money should be paid to McRae. The money put up by Wright was obtained from McLennan and was bet for him. On the day before the primary election, or on the morning of the election, Wright went to Whiddon and told him the bet was withdrawn, instructing him not to pay over the money. On the afternoon of the election McLennan also notified Whiddon not to pay the money to McRae, that the bet had been withdrawn. These facts appear from the testimony of Whiddon, who also testified that no demand had been made upon him by McLennan for the money, nor by any one for him, before he paid it over to the other party to the bet. He testified that he knew that the money put up by Wright was for McLennan, and that he paid it over to the other party to the bet on the afternoon of the day following the primary election.

Under this evidence, which was not disputed, we are satisfied that the verdict rendered by the jury was demanded, and that the court erred in granting a new trial. There was no appearance for the defendant in error in this court, and the record is silent as to the grounds upon which the judge of the trial court based his judgment. The only possible theory on which the court could have acted was that no demand for the payment of the money was made upon Whiddon prior to the time he paid over the money. However, no such demand was required by the law. The Civil Code, § 3721, provides that a stakeholder of money risked on a wager is bound to repay to the party depositing, at any time he may demand it before it is actually paid over to the winner; but if the money is paid over to the winner bona fide and without notice

of the party's intention to retract, this payment is a protection. Taking the section as a whole, the true construction of it is that either party to a bet may, at any time prior to the actual payment of the money to the other party, by notice to the stakeholder, withdraw the bet; and if the stakeholder disregards the notice and pays the money, he is liable to the party giving the notice.   In the case of *Leverett* v. *Stegall*, 23 *Ga.* 257, before the wager was paid, the stakeholder was notified to withhold it, but notwithstanding this notice and the full knowledge that the bet had been withdrawn, the money was paid over.   Said Judge Benning in that case:   "The stakeholder is the agent of both bettors; and he so remains as long as he retains the stakes.   He is but their mere agent; for betting being illegal, neither bettor acquires any right by the bet.   Either bettor, therefore, may, at any time before his stake has been delivered to the other bettor, revoke the stakeholder's authority to deliver the stake to the other bettor."   This case followed that of *Alford* v. *Burke*, 21 *Ga.* 46.   There is no reason whatever in our law why the plaintiff in this case, under the undisputed evidence, was not entitled to recover the money deposited by his agent with the stakeholder.   At first glance it might seem that what we now hold is in conflict with the ruling of this court in *Colson* v. *Meyers*, 80 *Ga.* 499; but a careful examination of that case shows that it is easily distinguishable from the case at bar.   In that case the notice given to the stakeholder amounted to nothing more than an instruction to withhold payment of the bet pending a probable contest of the election which was the subject of the wager, or, in other words, a warning to the stakeholder not to pay the bet until it had been officially determined that the plaintiff had lost.   It is true that in the case cited a new trial was granted because of a conflict in the evidence, and this court held that the judge should have left it to the jury to decide as to the *demand* made upon Colson.   Meyers testified positively that he made a demand on Monday after the election. Colson, the stakeholder, as positively denied this.   Harris, the attorney for Meyers, testified that he made a demand after he was employed by Meyers to bring suit, but he did not state whether the money had then been paid over or not.   The court held that the judge should have submitted to the jury the question whether or not demand was made, and, if so, whether it was made before

the money was paid over by the stakeholder.     Under all the previous decisions of this court, while it was necessary that demand for payment should be made upon the stakeholder by the party withdrawing the bet, if prior to the payment by the stakeholder to the other bettor the stakeholder has notice of the intention to retract, the payment of the bet by him is unauthorized and not bona fide, and upon suit the law will compel the stakeholder to pay back the money to the withdrawing bettor.     See *Dancy* v. *Phelan*, 82 *Ga.* 243.

In the present case the evidence is positive and uncontradicted that Whiddon, the stakeholder, had full notice of McLennan's intention to withdraw the bet, prior to the time he paid it over to the other party.     It was also undisputed that demand was made upon him for the money prior to the bringing of the suit.     It will therefore be seen that what we now hold is in exact accordance with the decision of this court in *Alford* v. *Burke*, 21 *Ga.* 46, and by a majority of the court in the case of *Leverett* v. *Stegall*, 23 *Ga.* 259; and while in the latter case Judge McDonald dissented from the decision rendered, the dissent did not take issue with any of the views upon which this opinion is based, but was on another branch of the case.     In fact, in his dissenting opinion Judge McDonald said: " If the stakeholder pays money or delivers property after notice not to do it, by the party making the deposit, it or its value may be recovered from him, and he can not defend on the ground that he paid it to the winner, because the court will not allow him to justify by the illegal transaction."     If there is anything in the case of *Colson* v. *Meyers*, supra, in conflict with what is now laid down, it is itself in direct conflict with the two earlier decisions referred to, and must yield to them as authority. The policy of the lawmaking power of this State has been to frown consistently on gambling transactions of whatever character.     As was said by Chief Justice Lumpkin in *Leverett* v. *Stegall*, supra : " If there be any class of gambling contracts which should be frowned upon more than another, it is bets on elections.     They strike at the foundations of popular institutions, corrupt the ballot-box, or, what is tantamount to it, interfere with the freedom and purity of elections, and there is no security for the permanence of our government."     A careful inspection of the record in the present case can not fail to impress the reader with the apt-

ness of the solemn warning conveyed in the words quoted, for there seems to be little doubt that the bet which gave rise to this suit was made primarily for the purpose of inspiring confidence in the supporters of the respective candidates and of influencing that class of voters whose chief desire is always to be on the winning, rather than the right, side of an election. It is suggested that the General Assembly might very profitably make betting on elections a penal offense.

*Judgment reversed. All the Justices concur, except Evans, J., disqualified.*