work was at night, and when day came he was generally sleepy and went home ; never studied about whether it was prudent and proper to understand all about the location. The pits were ninety to one hundred feet from the main line, which he used in going from his work to his home. Between the office and one or two of the tracks is a space of ten or fifteen feet, but he had not reached that point. The water-tank ran up against the ends of two of them. On two sides of this place were main lines. There was no wall or fence around it. There is one track that comes out and connects with the main line. There is nothing to prevent a man from walking down that track into the turn-table. The only difference between that track and the main line is, that you would see it lay in a cluster of cars ; except for the cars standing there, there is no difference between this track and a main line turning off there. It is part of the yard and not separated from it. There are no other parts of the yard where they have open pits between the tracks. He did not mean that it was unsafe to go on the track without a light, any more than that he might stump his toe against a cross-tie or something and fall. There was further testimony touching the extent of the injury, the pain and suffering, the plaintiff's earning capacity, etc.

WRIGHT & HARRIS, for plaintiff.

DORSEY, BREWSTER & HOWELL and MCCUTCHEN & SHUMATE, for defendant.

---

## SMITH *v.* RAY.

One who receives the money of another from a third person by winning it at a game of chance played with such third person, is liable to the owner in an action for money had and received, and the right of action does not rest upon the statute, but upon the common law. Mason *v.* White, 17 Mass. 559; Clarke *v.* Shee, Cowp.

197. Hence, a declaration which alleges, that the defendant is indebted to the plaintiff in a specified sum of money, for that on a given day the defendant did win the same from a named person at a game of chance by inducing the latter to wager the same at a game of chance known as "matching," title to said money being then and there in the plaintiff, and the defendant on demand having refused to turn over or pay the same to the plaintiff, together with an amendment adding that he, the plaintiff, lost the money by the said third person, and that the money was actually had and received by the defendant, who withholds it from the plaintiff unlawfully, sets forth a cause of action in favor of the plaintiff upon his own legal title to the money, and it was error to sustain a demurrer, or motion to dismiss, upon the grounds, that the suit was not instituted in the name of the person who wagered the money, that the money was not alleged to have been actually paid to the defendant, and that the declarations set forth no cause of action.

2. There was no error in rejecting an amendment to the declaration by which the plaintiff sought to introduce the name of the person who wagered the money as suing for his, the plaintiff's use, this amendment not only being unnecessary, but contemplating a shifting of the action from a legal right in favor of the plaintiff himself to a legal right in favor of a third person, the first of said rights depending on the common law and the second on a statute.                                        *Judgment reversed.*

October 1, 1892.

Gaming. Action. Party. Amendment. Before Judge Ross. City court of Macon. September term, 1891.

The action was by B. B. Smith, alleging: B. H. Ray is indebted to him $840, which sum Ray won from L. W. Smith at a game of chance by inducing him to wager the same upon a game of "matching," which is a game upon which money is risked, title to said $840 being in plaintiff and so remaining; and Ray on demand refused to turn over the same, etc. By amendment the plaintiff alleged that he lost the money by L. W. Smith, title to it being in plaintiff; that it was lost within six months before this action was filed; that defendant holds it by fraud or other illegal means; and that it was actually had and received by defendant. The defendant

demurred generally, and because the action was not instituted in the name of the loser of the money. The plaintiff offered to amend by adding the name of L. W. Smith as suing for the use of B. B. Smith. This amendment was disallowed, and the demurrer was sustained; to which rulings the plaintiff excepted.

M. G. BAYNE, by brief, for plaintiff.

L. D. MOORE and DESSAU & BARTLETT, for defendant.

---

RAY *et al. v.* STRICKLAND.

A judgment debtor having died intestate May 1st, 1870, and the execution issued on the judgment having, after various entries thereon, finally become dormant January 21st, 1887, no administration ever having been granted upon the estate of the deceased, the heirs at law all being of age and there being no debts of the estate other than this judgment, it was not too late on March 3d, 1890, for the owner of the judgment and *fi. fa.* to apply as a creditor for administration on the estate of the deceased. Although the judgment was then not only dormant, and the right to revive or sue upon it barred, the debt was not extinguished; and as the bar attached after the debtor's death, his administrator could waive it. Code, §2542; *Baker* v. *Bush,* 25 *Ga.* 594; *Castellaw* v. *Guilmartin,* 54 *Ga.* 299.                                        *Judgment affirmed.*

October 1, 1892.

Dormant judgment. Administration by creditor. Waiver. Before Judge ATKINSON. Pierce superior court. October term, 1891.

Application was made for letters of administration on the estate of Silas Overstreet; a *caveat* was overruled, and the caveators excepted.

Silas Overstreet died on May 1, 1870, intestate. There was no administration on his estate. On April 9, 1873, was issued an execution founded on a judgment rendered in the superior court on December 10, 1867, in favor of Ferst & Co. against Silas Overstreet. On April 11, 1873, this execution and judgment were transferred to J. W.