SEABOARD AIR-LINE RAILWAY COMPANY *v.* LUMBER-MAN'S COMPANY.

No. 6206.  JULY 10, 1929.  REHEARING DENIED AUGUST 7, 1929.

*Randolph, Parker & Fortson, Brandon & Hynds,* and *W. E. Kay,* for plaintiff in error.  *T. M. Cunningham Jr., A. R. Lawton Jr.,* and *Little, Powell, Smith & Goldstein,* for persons at interest, not parties of record.

*Watkins, Asbill & Watkins,* contra.  *Charles E. Cotterill,* for persons at interest, not parties of record.

RUSSELL, C. J.  This case was originally a suit instituted in the municipal court of Atlanta against the Seaboard Air-Line Railway Company by the Lumberman's Company.  The original petition is based upon section 2770 of the Civil Code of 1910.  It is alleged in substance that the plaintiff had shipped to Atlanta, Georgia, from Dacula, Georgia, over the railway of the defendant, certain carloads of lumber, and for said shipments the plaintiff had been charged as freight $185.81 in excess of the amount which should legally have been exacted under the tariff and rate prescribed by the Georgia Public Service Commission, by reason of which the defendant was liable under the law to the plaintiff in double the amount of the alleged overcharge.  Judgment was asked against the defendant in the sum of $371.62.  In the municipal court of Atlanta the trial judge, sitting without a jury, rendered a judgment in favor of the defendant.  On appeal the appellate division of the municipal court affirmed the judgment of the trial judge. The Lumberman's Company sued out a writ of certiorari to the superior court of Fulton County, and upon a hearing in the superior court the judgment of the appellate division of the municipal court was affirmed.  From the judgment of the superior court the plaintiff sued out a writ of error to the Court of Appeals, which

upon consideration reversed the judgment of the judge of the superior court and adjudged that the plaintiff was entitled to recover the full amount sued for, Judge Bloodworth dissenting from the judgment of reversal. Upon an application for the writ of certiorari the writ was granted, this court being of the opinion that the questions presented were of such gravity and importance, not only to the shipping public but also to the short-line railroad carriers, that the writ of certiorari should be issued. After a thorough and mature consideration of all of the rules of the Public Service Commission which bear upon the subject, the tariffs, and the mass of testimony introduced, we have reached the conclusion that the plaintiff is not entitled to recover under the record. The real issue in the case is whether the carrier was entitled to collect anything upon the shipments of lumber in excess of $13.50 per car upon the eight cars of lumber comprising the shipments from Dacula to Atlanta. The action of the plaintiff, the Lumberman's Company, is based upon the contention that the charge of the carrier should have been restricted to this amount, and that the excess paid by it for the carriage of the eight cars of lumber is subject to be reclaimed and repaid and the amount doubled as the penalty prescribed by law. The defendant contends that when the classifications, tariff, and all of the rules of the Public Service Commission applicable to the shipments of lumber are construed together and these regulations harmonized in accordance with the custom and practice of many years, it is evident that there was no overcharge of freight collected.

In the briefs of counsel in this case many cases have been cited, taken from the reports of the Interstate Commerce Commission, which are of very little value, for the reason that the question before us is one of intrastate freight rate, and the question must be controlled by the laws of Georgia under rules and regulations which the Georgia Public Service Commission is authorized to initiate. Section 2630 of the Code provides: "The power to determine what are just and reasonable rates and charges is vested exclusively in said commission; and the commissioners shall make reasonable and just rates of freight and passenger tariffs, to be observed by all railroad companies doing business in this State." The Civil Code, § 2631, provides: "The railroad commissioners [now public-service commissioners] are required to make for each

of the railroad corporations doing business in this State . . a schedule of just and reasonable rates of charges for transportation of passengers and freight and cars on each of said railroads." The power to make intrastate rates in Georgia has frequently been held to be the exclusive prerogative of the Public Service Commission. *Sorrell* v. *Central Railroad*, 75 *Ga.* 509; *Wight* v. *Pelham & Havana Railroad Co.*, 18 *Ga. App.* 195 (89 S. E. 176). One of the general rules governing the carriage of freight, as enacted by the public service commission and which governs except in special cases, is rule 6 of the "freight rules," as appear on page 51 of Reports 53-54 of the Georgia Public Service Commission. In this rule it is declared, that, "Unless otherwise provided by the Commission, all freight charges shall be assessed upon the actual weight of the goods transported, when such actual weight can be ascertained." It will be observed from this language that it is only in special cases which must be expressly provided for as exceptions to the general rule that freight charges can be assessed otherwise than upon the actual weight of the goods transported. The rule provides that the actual weight of the goods transported is to control the freight charge when the actual weight can be ascertained. The rule is especially applied to cases of carload shipments, because in the second division of rule 6 provision is made for ascertaining the actual weight of carload shipments, the provision being that "In the case of carload shipments, such actual weights shall be ascertained by a sworn weigher, who shall balance the scales immediately before weighing each car, and shall see to it that the car to be weighed is free from all bearing of any other car or cars, except where the articles of freight being shipped are loaded on two or more cars, lapped." Rule 6 further provides that in the event a carload shipment originates at or moves from a point where there is no track scales, it shall be the duty of the carrier to have the same weighed at the first convenient weighing station in the general line of direction in which the shipment moves, etc.

Conceding it to be true, as argued by learned counsel for the respondent, that the customary units of rates as recognized and prescribed by the Georgia Commission and the Interstate Commerce Commission are (1) per hundred pounds, (2) per ton, and (3) per car, or per carload, it still can not be questioned that under the provisions of rule 6, when specially applied to carload ship-

ments, the actual weight shall be ascertained and "all freight charges shall be assessed upon the actual weight of the goods transported." It is true that where the charges are based on the use of the car and not upon the amount loaded into the car, there are instances of a rate per car, but this rate is immaterial in the present instance. Terminal and switching charges are based upon a per-car basis, but these exceptions are comparatively rare. The classifying rate on lumber reads, "Lumber, dressed or rough, C. L., minimum weight 24000 pounds, class P." This is a plain statement that the minimum weight for which a carload rate can be obtained on a shipment of lumber, dressed or rough, is 24000 pounds. This is the minimum weight of the carload specified in this rating and the minimum weight of lumber for the carriage of which the carload rate can be obtained. Upon any less quantity than 24000 pounds the higher rate of freight prescribed for less than carload shipments would apply. However, no matter what the nature of the shipment as to quantity, there is not stated any exception to the general principle announced in rule 6 that freight charges shall be fixed by the weight of the shipment. The amount of freight charged in this case was based upon the actual weight of the shipments by taking the proper rate for a carload of 24000 pounds, reducing the same by the method pointed out in rule 8 to the appropriate amount per hundred pounds, and using this latter figure in arriving at the amount of the freight payable. As said by the Interstate Commerce in Leonard *v.* Railroad, 3 I. C. C. R. 241, "Prima facie the system of charging by weight is more just than any other. It is the only system whereby the charge is made proportionate to the service rendered. It is the only system whereby inequalities as between shippers, resulting from differences in the size of car, can be obviated. As long as those differences exist, there is always room for favoritism, unless the carload is *accurately apportioned to the size of the car;* and this we think has never been attempted, for the reason, doubtless, that because of the great diversities it was seen to be impracticable. The reasons ought to be very imperative which would require the abolishment of a rule which excludes favoritism to make way for another which not only admits of but invites it."

If rule 19 of the "Freight Rules" of the Georgia Public Service Commission is applied in the present instance, as we think it neces-

sarily must be, it is very plain that the rate charged upon the shipments now under consideration was not excessive. Rule 19 consists of four parts. The first states: "A ton, as intended by all of the regulations of the Commission, is 2000 pounds unless otherwise specified." The second subdivision defines a minimum carload, unless otherwise specified in the freight classification of the Commission, to be ten tons.. The third subdivision, applying the general rule that freight charges are to be fixed in proportion to the weight of shipment, makes provisions for carloads in excess of the minimum weight; and it is declared that "Where the weight of a shipment of any class of freight exceeds the specified carload weight for such freight, charges for the transportation thereof shall be based upon the carload rate per hundred pounds applied to the actual weight of the shipment without reference to the number of cars required in transportation." The fourth subdivision is in perfect harmony with the provision in the third paragraph prescribing the freight charges upon carloads in excess of the minimum weight, when it declares that "a carload shipment shall be a consignment of at least the specified minimum carload weight of one class of freight." So we see that under rule 6, in the absence of any contrary provision appearing in this record, it is required that the freight charges upon the shipments now under consideration be assessed upon the actual weight of the goods transported; and under the provisions of rule 19, inasmuch as the weight of the shipment when ascertained, as rule 6 requires it shall be, exceeded the specified carload weight of 24000 pounds, the charges for the transportation were based upon the carload rate per hundred pounds applied to the actual weight of the shipment. The words "minimum weight 24000 pounds," under the evidence in this record, could not have been put in the classification solely "to insure the shipper getting a car that will load at least the amount of the minimum before the carrier shall be entitled to charge him the per car rate of $13.50," as argued by learned counsel for the defendant in error, since it is in the evidence that there are no cars now used for shipping lumber which would not carry much more than 24000 pounds. The average of a load of lumber which is carried by the Seaboard and other lines similarly situated is about 48000 pounds, and the cars can be loaded to a capacity of over 100000 pounds. In our opinion a more reasonable explanation of

the meaning of the term "minimum weight 24000 pounds" is that these words fix a limitation or specify the smallest amount or weight of lumber which would entitle the shipper to receive the benefit of carload rates on lumber. The statement of this weight is notice that the carrier would not haul a quantity of lumber weighing less than 24000 pounds at carload rates, or if the shipment was less than 24000 pounds in weight the charge assessed would be the same as if 24000 pounds was actually carried. For rate-making purposes freight is divided into carload and less than carload lots. The carload rate is always less per unit of weight than the rate assessed against a shipment less than a carload. When the classification states "C. L. *minimum* weight 24000 pounds," it means that the shipment must weigh at least 24000 pounds to constitute a carload; and if it weighs less than 24000 pounds, the shipment would take the higher rate applicable to a less than carload shipment.

It is argued by learned counsel for the defendant in error that as to the shipment in question there is no "specified carload rate for such freight," and that for this reason, among others, rule 19 has no application in the case at bar. The legend on the margin of the third paragraph of rule 19 is: "Carloads in excess of minimum weight." This marginal note may be considered as a part of the rule as indicating the intention of the public service commission in formulating the rule. *Lasseler* v. *O'Neill,* 162 *Ga.* 826 (135 S. E. 78, 49 A. L. R. 1076). Therefore, when the rule speaks of the "specified carload weight for such freight," it necessarily refers to the minimum carload weight prescribed by the tariff. No classification fixes the absolute, unvarying weight of any carload, because naturally the weight varies with the amount loaded in the particular car. The classification fixes the minimum weight which shall constitute a carload and entitle the shipper to carload rates, and the amount of weight which can be loaded in a car is determined by its capacity as marked upon the car and verified under the provisions of rule 6 to which we have already referred. Manifestly rule 19, when it refers to "specified carload weight for such freight," taken in connection with the definition of a minimum carload in the second paragraph of the rule, and with the definition of a "carload shipment" as "the specified minimum carload weight" in the fourth paragraph of the rule, has

reference to the classification which reads "C. L. *minimum* weight 24000 pounds." We have already alluded to the fact that the record does not disclose that the shipment now under consideration comes within any exception to the general rule stated in rule 6, that, "unless otherwise provided by the Commission, all freight charges shall be assessed upon the actual weight of the goods transported," and, as if to emphasize that principle as applied to the facts in the present record, it must be noted that the provision in the third paragraph of rule 19 for appraising the freight charges where the weight of a shipment exceeds the specified carload weight provides that the principle applies to "any class of freight." Therefore it can not be possible that lumber was intended by the Commission to be excepted from the general rule to which we have referred. Especially so since it is expressly provided in rule 4 (probably with a view to prevent partiality or favoritism) that, "unless *otherwise specially provided* by the rules or classifications of the Commission, every railroad shall assess its charge for transporting a shipment of any class upon the actual weight thereof, and at the lowest rate of freight actually in force on said railroad upon goods of the same class, whether such rates be prescribed by the Commission or otherwise." (Italics ours.)

We are of the opinion that, upon application of the third paragraph of rule 19, the carrier was entitled to charge, for the excess in weight over the specified carload weight (24000 pounds), the carload rate per hundred pounds applying to the actual weight of the shipment. The facts of this case differentiate it from Georgia Peachgrowers Asso. *v.* A. C. L. R., 10 I. C. C. 255, Leonard *v.* C. & A. R. R., 2 I. C. C. 599, and Brooks-Scanlon Corp. *v.* A. C. L. R. R., 113 I. C. C. 237, cited by the Court of Appeals. The classifications and rules of the Public Service Commission make it clear to us that the rate is to be calculated on the actual weight of the shipment, by reducing the rate per carload as fixed by the minimum carload weight to a rate per hundred pounds. The standard tariff quotes rates per hundred pounds and per ton. Nevertheless the freight is calculated on the basis of the actual weight of the shipment. It appears from the evidence that the average weight of lumber in the eight cars carried was 65387 pounds per car; and in view of the foregoing rulings, the Court of Appeals erred in holding that the carrier should not have charged

for the excess in weight represented by the difference between 24000 pounds and 65387 pounds of lumber per car, and that consequently the shipper was entitled to collect the excess freight charged and the penalty of one hundred per cent. thereon.

*Judgment reversed. All the Justices concur.*