THE STATE OF DELAWARE, ex rel. Clarence M. Ortlip, v. PIERRE S. DU PONT, Tax Commissioner of the State of Delaware.

(*October* 20, 1944.)

SPEAKMAN, J., sitting.

*Percy Warren Green* for relator.

*Philip Cohen,* Deputy Attorney-General, for respondent.

Superior Court for New Castle County, No. 157, May Term, 1944.

SPEAKMAN, J., delivering the opinion of the Court:

*Section* 189 of the *Code of* 1935, as above quoted, originated as the result of two Acts of the General Assembly amending Chapter 68 of the Revised Code of 1852, entitled "Concerning retailers of goods and peddlers." The chapter at the time of the adoption of the respective amendments dealt exclusively with the licensing of retailers of goods and peddlers.

The respective amendments were passed on February 25, 1859 and March 8, 1861, and are published as Chapter 646 of Volume 11, and Chapter 123 of Volume 12 of our Laws. The amendments without any change in language were incorporated into a single paragraph and were carried into the *Revised Code of* 1874 as the last paragraph of *Section* 5 of *Chapter* 68 thereof. The paragraph as published in said Code is as follows:—

"All persons other than bona fide citizens of this State, applying for a travelling license to retail or peddle any goods, wares or merchandise whatever, either on foot, or with horse and carriage or horses and carriage, or [who]

shall take out license with a view to sell or dispose of goods, wares or other merchandise at public auction or vendue in addition to the requirements of the provisions of the said chapter [68 *Revised Code of* 1852], for such license such applicant shall pay the further sum of one hundred dollars, for each and every county of said State, wherein such goods [and chattels] shall be vended."

The meaning of the language "All persons other than bona fide citizens of this State * * * shall take out license with a view to sell or dispose of goods, wares or other merchandise at public auction or vendue in addition to the requirements of the provisions of the said chapter, for such license such applicant shall pay the further sum of one hundred dollars" is quite clear. The *Chapter* [68 *Revised Code of* 1852] deals exclusively with peddlers and dealers in merchandise. No mention of auctioneers is made in the chapter. The quoted language means nothing more than that a non-resident dealer in merchandise, in addition to the fee for a license, payable by all dealers irrespective of residence, must pay the further sum of one hundred dollars to dispose of his merchandise at public auction. The language does not mean that such additional sum is payable by an auctioneer employed by a dealer to call a sale.

The uncertainty about the meaning of the section as now considered resulted from the adoption of the *Revised Code of* 1915. The section appears in the 1915 *Code* as *Section* 214.

The 1915 *Code* was prepared by a Commission appointed for that purpose pursuant to a joint resolution of the General Assembly, in which the Commission was directed to revise, codify and arrange in a systematic and condensed form, all the existing statute laws of the State of a public and general nature, under appropriate titles, but in no case to omit, add to, alter, change or vary the meaning of any existing law.

Pursuant to this direction the Commission embodied in one chapter most, if not all, of the laws relating to the revenue of the State. This is *Chapter* 6 of the 1915 *Code,* and it is entitled "State Revenue." The chapter contains thirty articles. *Article* 13 is entitled "Merchants;" *Article* 14 is entitled "Hucksters and Peddlers," and *Article* 15 is entitled "Occupation Licenses." Licenses to sell merchandise are provided for under *Article* 13. All of *Article* 14 except *Section* 177 thereof [214 of said Code] deals exclusively with hucksters and peddlers. Licenses for auctioneers are issued under the provisions of *Article* 15, the fee for such a license being ten dollars.

In the arrangement of the 1915 *Code* the provisions of *Chapter* 68 of the 1852 *Code,* with all amendments thereto, were subdivided, and that part relating to peddlers, including the paragraph containing the language in question, was placed in *Article* 14 of *Chapter* 6 of the 1915 *Code,* and the said paragraph became *Section* 177 of said *Chapter,* and *Section* 214 of said *Code.* The residue of said *Chapter* 68 of the 1852 *Code,* as amended, was placed elsewhere in the 1915 *Code.*

*Section* 214 of the 1915 *Code* is in almost the exact language as the pre-existing law, except in the following respects. The section was given the title or heading of "Peddlers and Auctioneers Not Citizens of State; License Fees for:—", the phrase "in addition to the requirements of the provisions of. *Article Fourteen* of this Chapter" was substituted for "under the provisions of said Chapter," and the section was given the following foot note: "11 *Del. Laws, Ch.* 646, § 1; 12 *Del. Laws, Ch.* 123, § 1."

The *Code of* 1915, as revised, codified and arranged by the Commission was adopted by the General Assembly and became the law of this State. *Section* 214 of said Code, without change was carried into the *Code of* 1935, and appears there as *Section* 189.

■■ It has been said by this Court that:

"Where a statute is embodied in a revision or codification without subsequent change of language, it is considered as a continuance of the old law with the same meaning and effect, and not as a new and original enactment, unless there is a plain indication of legislative intent to alter the law; and a mere separation of sections of an act and a rearrangement of them in different connections does not, in the absence of intent so to do, change the purpose, operation and effect of the original statute." *Nigro v. Flinn,* 8 *W. W. Harr.* (38 *Del.*) 368, 192 A. 685, 687.

Specifically with reference to the 1915 *Code* the Chancellor said:

"It was not the purpose of the Revised Code commissioners in the drafting of the 1915 *Code,* or the Legislature in its enactment, generally speaking, to provide for new legislation. The purpose was, as is shown by the joint resolution creating the commission, 'to codify and arrange existing law.' " *Atlantic Ref. Co. v. Penn Seaboard Steel Corp.,* 16 *Del. Ch.* 1, 138 *A.* 724, 725.

In the final analysis the question for determination is whether there is evidence of a plain intention on the part of the General Assembly to change the law in question, as it theretofore existed, when it adopted the 1915 *Code.* There is sufficient evidence showing the lack of such an intention.

An intention to change the existing law is not evidenced by the separation of *Chapter* 68 of the 1852 *Code,* as amended, into separate parts, and putting that part relating to peddlers, including the paragraph containing the language in question, in a separate article entitled "Hucksters and Peddlers" in the 1915 *Code,* and the residue of the chapter elsewhere in the Code, nor from the title or heading can it be inferred that the Legislature intended to include auctioneers within the provisions of the Article.

The fact that the phrase "under the provisions of said Chapter" in the pre-existing law was changed to "in addition to the requirements of the provisions of *Article Fourteen* of this Chapter" likewise cannot be accepted as evidence of legislative intent to subject auctioneers to the provisions of *Article* 14. Auctioneers were not subject to the pre-existing law. The change as made does not evidence any intention to bring auctioneers within the provisions of *Article* 14. The Legislature negatived such an intent by providing for the licensing of auctioneers under *Article* 15.

The use of foot notes was resorted to throughout the 1915 *Code* for the purpose of showing the source of the respective Code sections. *Section* 214 of the *Code* carries the foot note, 11 *Del. Laws, Ch.* 646, § 1; 12 *Del. Laws, Ch.* 128, § 1. This foot note was passed as a part of the *Code,* and therefore it is entitled to some consideration in determining the meaning of the section. In *Lasseter v. O'Neill,* 162 *Ga.* 826, 135 *S. E.* 78, 49 *A. L. R.* 1076, it was held that such a note is entitled to consideration, as a part of the statutory law, as indicating the legislative intent in adopting the provision of law.

For the purpose of showing the legislative intent to change the law so as to subject auctioneers to its provisions the relator relies on the title or head note of the section:—"Peddlers and Auctioneers Not Citizens of State; License Fees for:—"

There are cases to the effect that where a head note to a subdivision or section of a Code was in the bill which was subsequently adopted as the Code, the head note is a part of the Code itself, and it may be resorted to for the purpose of ascertaining the particular intent of the Legislature in regard to the subdivision or section in which it was placed. The instant case, however, is different from those cases.

In those cases a single section or a subdivision of a code could be considered, by itself, as one entire Act.

This Court has said that:

"A headnote is, in no proper sense, a title. In some sense it is an index. Plainly, where the language of the Act itself is clear and unambiguous, resort may not be had to a headnote to a section to create an ambiguity, and thereby to furnish a reason for supplying an alleged omission." *Trader v. Jester*, 1 *Terry* (40 *Del.*) 66, 1 *A.* 2d 609, 613.

Upon the same principle, where the provisions of an Act have been clearly adopted by subsequent legislation and the clear intent disclosed, an ambiguity may not be created by the use of a mere headnote to a section, which has no definite connection with the contents of such section.

In my opinion, there is no plain indication of legislative intent to alter the pre-existing laws in question, so as to include auctioneers within its provisions. Having arrived at this conclusion, it is not necessary to consider the constitutional question.

An order will be signed directing the issuance of the writ of mandamus in accordance with the prayer of the petition.