S08Q0323. HARDIN et al. v. NBC UNIVERSAL, INC. et al.
(660 SE2d 374)

THOMPSON, Justice.

Under the authority of 1983 Ga. Constitution, Art. VI, Sec. VI, Par. IV and OCGA § 15-2-9, the United States District Court for the Northern District of Georgia has certified two questions of Georgia law in a putative class action lawsuit pending in that court.

As stated in the district court's certification order, plaintiffs are Georgia residents who unsuccessfully played the "Lucky Case Game," which is televised as part of the NBC television program *Deal or No Deal*. During each broadcast of *Deal or No Deal*, an announcer invites home viewers to participate in the "Lucky Case Game" by selecting one of six on-screen gold briefcases as the lucky case.[1] Viewers may submit their lucky case choice free via the internet, or by text messaging for a fee of $.99. Toward the end of the program, the winning briefcase is revealed. Entrants who picked the correct "lucky case" are entered into a random drawing, and the winner of that drawing receives a prize.

Plaintiffs brought this action against NBC Universal, Inc., Endemol USA, Inc., and VeriSign, Inc. (the organizers and sponsors of the game), under the authority of OCGA § 13-8-3 (b), which allows the loser of a gambling consideration to maintain a private, civil action to recover damages from the winner. Through that action plaintiffs sought to recover — for themselves and on behalf of a class of Georgia residents who played defendants' games by sending a text message

---

[1] It was conceded at oral argument that defendants no longer offer the Lucky Case Game to residents of Georgia.

from a Georgia area code — the $.99 text message charge. Defendants have filed a motion to dismiss pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure, asserting that plaintiffs have failed to state a claim upon which relief may be granted. In order to determine the threshold question of whether plaintiffs have stated a claim under OCGA § 13-8-3 (b), the District Court certified the following questions to this Court:

> 1. Does OCGA § 13-8-3 (b) authorize the filing and mainte- nance of a civil suit to recover money paid out or lost on account of one's participation in an illegal lottery?
> 2. If OCGA § 13-8-3 (b) authorizes a suit to recover money paid out or lost on account of an illegal lottery, may the plaintiff in such a suit recover from the lottery's promoter or organizer?

For the reasons that follow, we hold that OCGA § 13-8-3 (b) does not authorize plaintiffs to recover from defendants the text message charges they paid to participate in the lucky case game. Accordingly, we do not reach the second question.

OCGA § 13-8-3 (a) declares that "[g]ambling contracts are void; and all evidences of debt . . . executed upon a gambling consideration, are void in the hands of any person." Subsection (b), however, establishes an exception to the rule that illegal contracts generally will not be enforced and that the law will not aid parties in pari delicto, but will leave the parties where it finds them. OCGA § 13-8-3 (b) provides:

> Money paid or property delivered upon a gambling consid- eration may be recovered from the winner by the loser by institution of an action for the same [within specified time parameters]. . . .

OCGA § 13-8-3 had its genesis in the Acts of 1764 and 1765 (Cobb 725-727); the Act of 1765 first "provided that persons who might lose money or goods by 'playing' or 'betting' at 'any game whatever' might, after having 'paid or delivered' the money or goods so lost, maintain a suit for its recovery against the 'winner.' " *Lasseter v. O'Neill,* 162 Ga. 826, 829 (135 SE 78) (1926). The public policy interests underly- ing the Act were described in *Dyer v. Benson,* 69 Ga. 609, 610 (1882): " '[T]he great rule of public policy established by our legislature is, that the winner shall not be protected in his unlawful gains, and that the loser, though party to an illegal wager, may sue and recover back the money.' "

This civil right of action was essentially codified in the Code of 1861 and carried forward in the Code of 1910, which authorized recovery for money or property paid upon a "gaming consideration." When the Code was revised in 1982, a minor change was made in the language of OCGA § 13-8-3 (b) to permit civil recovery for "gambling consideration," as opposed to the earlier phrase "gaming consideration."

Thus, to state a claim against defendants under OCGA § 13-8-3, plaintiffs must allege that a "gambling contract," which was supported by a "gambling consideration," existed between the parties. A gambling or wagering contract was defined in *Martin v. Citizens Bank of Marshallville*, 177 Ga. 871, 874 (171 SE 711) (1933), as

> "one in which the parties in effect stipulate that they shall gain or lose upon the happening of an . . . event in which they have no interest except that arising from the possibility of such gain or loss." . . . By the terms of such a contract the consideration must fall to the one or the other upon the determination of the specified event.

Applying the definition in *Martin*, we agree with the district court that the contract between plaintiffs and defendants in this case "does not involve a bet or wager, neither defendants nor any participant is certain to lose, and the contract's consideration [the $.99 text messaging entry fee] never hangs in the balance." Accord *Talley v. Mathis*, 265 Ga. 179 (1) (453 SE2d 704) (1995) (no gambling contract existed unless parties contracted to gamble against one another and one party lost). Accordingly, we find an absence of gambling consideration and therefore, by its terms, OCGA § 13-8-3 (b) offers no avenue of recovery to plaintiffs. Other courts in analogous situations have reached similar conclusions. See *Humphrey v. Viacom, Inc.*, Slip Copy, 2007 WL 1797648 (D.N.J.) (entry fees paid to participate in defendants' fantasy sports leagues are not "bets" or "wagers" because, inter alia, "[d]efendants do not compete for the prizes"); *Las Vegas Hacienda v. Gibson*, 77 Nev. 25 (359 P2d 85) (1961) (offering prize to winner of competition does not constitute wagering contract if the offeror does not participate in the competition and has no chance of winning the prize).

Plaintiffs nonetheless assert that the activity in question constitutes an illegal lottery, thus is "commercial gambling" under OCGA § 16-12-22 (a) (6) of Georgia's Criminal Code, and therefore, OCGA § 13-8-3 provides them the right to assert a civil cause of action. Even assuming the activity constitutes an illegal lottery under Georgia

law,[2] there was no gambling contract and it follows no "gambling consideration" for purposes of recovery under OCGA § 13-8-3. See *Martin*, supra; *Thompson*, supra, 74 Ga. App. at 427 (§ 20-505, predecessor to OCGA § 13-8-3, did not authorize recovery of money paid out or lost in operation of lottery).

Nor do we accept plaintiffs' suggestion that the minor alteration in the language of OCGA § 13-8-3 (b) from "gaming consideration" to "gambling consideration" constituted a change which would abrogate all previous authority interpreting the statute. Nothing in the Code suggests that the change from "gaming" to "gambling" was intended to broaden the reach of the civil recovery statute. Indeed, the change is minor. See Black's Law Dictionary, which defines "gaming" as "the practice or act of gambling." The 1982 Legislature (and subsequent bodies), with knowledge of the foregoing authority, could have modified OCGA § 13-8-3 (b) to expressly include lotteries within its scope; however, it did not do so. Thus, we are guided by the statement of legislative intent in OCGA § 1-1-2 which provides: "[e]xcept as otherwise specifically provided . . . the enactment of this Code . . . is not intended to alter the substantive law in existence."

Accordingly, we hold that OCGA § 13-8-3 (b) does not authorize the filing of a civil suit to recover the text message fees paid by plaintiffs in this case.

*Question answered. All the Justices concur.*

DECIDED APRIL 21, 2008.

*Daughtery, Crawford, Fuller & Brown, Jason L. Crawford, James C. Fuller, Dustin T. Brown, Buchanan & Land, Jerry A. Buchanan, Benjamin A. Land*, for appellants.

*King & Spalding, Jonathan R. Chally, L. Joseph Loveland, Jr., S. Stewart Haskins II, Arnold & Porter, James L. Cooper*, for appellees.

---

[2] Although we do not reach the question of whether the activity involved in this case constitutes a "lottery," we note that the law has consistently excluded lotteries from the scope of OCGA § 13-8-3 (b) and its predecessor statutes and Acts. See *Lasseter v. O'Neill*, supra at 829 (Acts of 1764 and 1765 "did not authorize suits to recover money . . . paid out on account of losses by lotteries or transactions in the nature of lotteries"); *Thompson v. Ledbetter*, 74 Ga. App. 427 (39 SE2d 720) (1946) (Code did not authorize suits for recovery of money paid on account of lotteries); *Moore v. Atlanta Athletic Club*, 79 Ga. App. 41 (52 SE2d 628) (1949) (applying *Thompson*).